UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VALERIE MELROSE,<br><br>        Plaintiff,<br><br>  *- against -*<br><br>NEW YORK STATE DEPARTMENT OF HEALTH OFFICE OF PROFESSIONAL MEDICAL CONDUCT,<br><br>        Defendant. | 05 Civ. 8778 (SCR) (LMS)<br><br>**REPORT AND<br>RECOMMENDATION** |

**TO: THE HONORABLE STEPHEN C. ROBINSON, U.S.D.J.**

Valerie Melrose ("Plaintiff") commenced suit in this Court on October 17, 2005, against New York State Department of Health Office of Professional Medical Conduct ("Defendant"), under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e – 2000e-17 and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12112 – 12117.[1] Plaintiff claims that Defendant discriminated against her based on her disability and race by denying Plaintiff's request for reasonable accommodation, harassing her and subjecting her to unequal terms and conditions of employment, and terminating her employment. See Docket # 2, Plaintiff's Complaint ("Compl.") ¶ 4.

Plaintiff filed an Amended Complaint ("Am. Compl.") on April 24, 2006, against Defendant alleging discrimination in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a); Westchester County Human Rights Law § 700.03; New York Executive Law

---

[1] Plaintiff initially filed her complaint *pro se* and her application to proceed *in forma pauperis* was granted at that time. However, since April 24, 2006, Plaintiff has been represented by counsel. See Docket # 8.

1

§ 296; The Americans with Disabilities Act, 42 U.S.C. §§ 2000e - 2000e-17; and 42 U.S.C. § 1981.  Am. Compl. ¶¶ 35, 37, 40, 44, 47, 50.  Currently pending before the Court is Defendant's Motion to Dismiss the second through sixth causes of action in the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), which was filed August 9, 2006.  See, Docket # 13, Motion to Dismiss; Docket # 14, Memorandum of Law in Support of Defendant's Motion to Dismiss ("Def.'s Mem. Supp. Mot. to Dismiss").  Plaintiff's Opposition ("Pl.'s Opp'n") was filed September 18, 2006.  See Docket # 17.  Defendant filed a Reply Memorandum ("Reply Mem.") on September 18, 2006.  See Docket # 18.  Your Honor referred the matter to me for a Dispositive Motion on October 2, 2006.  See Docket # 20.  For the following reasons I conclude, and respectfully recommend that Your Honor should conclude, that Defendant's motion to dismiss should be granted.

I.   **BACKGROUND**

   A.   Summary of Relevant Facts[2]

Plaintiff is a black woman who suffers from avascular necrosis of both hips.  Am. Compl. ¶¶ 7-8.  Plaintiff began working for Defendant as a Senior Medical Conduct Investigator on or about September 25, 2003.  Id. ¶ 8.  In June 2004, Plaintiff submitted a doctor's note to her supervisor containing a diagnosis of avascular necrosis of the hips.  Id. ¶ 17.  During the course of employment, Plaintiff alleges that Defendant discriminated against Plaintiff on the basis of her race and disability.  Specifically, Plaintiff claims that her supervisor, Mary Malone, assigned Plaintiff to a desk segregated from all other investigators, despite Plaintiff's request to be

---

[2]   The facts set forth in this section are drawn from the Amended Complaint.  They are read liberally "to raise the strongest arguments that they suggest." McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999).

integrated with the other white employees.  Plaintiff alleges that her request to be integrated was denied even after a desk became available where the other investigators were seated and was left open despite Plaintiff's request.  Id. ¶¶ 9, 12.  Plaintiff also claims that she was publicly reprimanded by her supervisor in front of other office staff regarding a telephone call Plaintiff received, Plaintiff's judgment on a case, her absences, her tardiness, and her disability.  Id. ¶ 10.

Additionally, Plaintiff alleges that she explained to her supervisor in private about a conflict of interest she had in a case she was working on regarding a medical facility where Plaintiff had received treatment for her disability.  Id. ¶ 11.  Plaintiff claims that as a result of this conversation, her supervisor publicly badgered her in the office about her disability and humiliated her in front of her co-workers.  Id.  Plaintiff claims that other employees were not treated the same way when they presented conflict of interest issues.  Id.

Plaintiff also claims that she made numerous requests to her supervisor for accommodations for her disability.  Id. ¶¶ 13-15.  Specifically, Plaintiff asked that she be allowed to come in one hour later and leave one hour later due to her difficulties in getting ready for work, walking, scheduling doctor's appointments, and various other activities.  Id. ¶ 13.  Plaintiff claims that her requests were denied except on two occasions.  Id. ¶ 13.

In May 2004, Plaintiff received an overall satisfactory evaluation including positive comments from her supervisor's manager.  Id. ¶ 16.  However, on July 1, 2004, Plaintiff's supervisor filed a probationary report recommending Plaintiff's termination due to the perceived effect of Plaintiff's disability on her punctuality and attendance.  Id. ¶¶ 16-17.  Plaintiff was terminated on August 7, 2004.  Id. ¶ 18.  Plaintiff claims that a white employee was able to extend her probationary period and become a permanent employee and that Plaintiff's request

3

for equal treatment was denied. Id. ¶ 19. Plaintiff maintains that as a result of Defendant's actions, she has suffered economically and emotionally. Id. ¶ 20.

  B. <u>Defendant's Motion to Dismiss</u>

Plaintiff states six causes of action in the Amended Complaint: discrimination on the basis of disability under § 504 of the Rehabilitation Act, 29 U.S.C. § 794(a); disability discrimination in violation of the New York State Human Rights Law, N.Y. Exec. Law § 296; violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 2000e - 2000e-17; discrimination in violation of 42 U.S.C. § 1981; and two claims under Westchester County Human Rights Law § 700.03, one for disability discrimination and the other for unspecified (presumably racial) discrimination.

In lieu of an Answer, Defendant moves to dismiss all of Plaintiff's claims, except for her Rehabilitation Act claim, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). <u>See</u> Docket #'s 13, 14. More specifically, Defendant argues that dismissal of these claims is warranted because they are barred by the Eleventh Amendment. Defendant additionally argues that Plaintiff fails to state a claim under Title II of the ADA.

**II. DISCUSSION**

  A. <u>Standard of Review</u>

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a court must dismiss a case for lack of subject matter jurisdiction "when [it] lacks the constitutional or statutory power to adjudicate [the case]." <u>Makarova v. U.S.</u>, 201 F.3d 110, 113 (2d Cir. 2000). Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint will be dismissed unless it "plead[s] 'enough facts to state a claim for relief that is plausible on its face.' " <u>Patane v. Clark</u>, 508 F.3d 106, 111-12 (2d Cir. 2007) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955,

1974 (2007)).  Whether considering a motion to dismiss for lack of subject matter jurisdiction or for failure to a state a cause of action, the court "must accept as true all material factual allegations in the complaint."  Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998).  However, "when the question to be considered is one involving the jurisdiction of a federal court, jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it."  Id.  In deciding factual disputes under 12(b)(1), the court may look to evidence outside of the pleadings, including affidavits, to determine whether it has jurisdiction.  See, e.g., Robinson v. Gov't of Malaysia, 269 F.3d 133, 141 n.6 (2d Cir. 2001); Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000) (finding that in deciding factual disputes regarding jurisdiction a court may look beyond the pleadings and if necessary conduct an evidentiary hearing).

Where motions to dismiss are brought pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction, as well as on other grounds, the court must decide the Rule 12(b)(1) motion first.  See Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990) ("[T]he court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined.") (internal quotation marks and citations omitted); see also Drees v. County of Suffolk, No. 06-CV-3298, 2007 WL 1875623, at *5 (E.D.N.Y. June 27, 2007) (Rule 12(b)(1) motion must be decided first since disposition of Rule 12(b)(6) motion is decision on the merits and thus an exercise of jurisdiction).

B.     ADA Claims

1.     Title I of the ADA

Plaintiff has not indicated which Title of the ADA she brings her claims under; however, Defendant has moved to dismiss Plaintiff's claims under both Title I and Title II. Def's Mem. Supp. Mot. to Dismiss at 3-10. Defendant argues that Plaintiff's Title I and Title II claims are barred by the Eleventh Amendment. Def's Mem. Supp. Mot. to Dismiss at 3, 6-10.

The Eleventh Amendment provides that: "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has held that sovereign immunity also applies to a state sued by its own citizens. Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 72-73 (2000). In addition, the Supreme Court has held that Eleventh Amendment immunity extends to state agencies. Welch v. Texas Dep't of Highways & Pub. Transp., 483 U.S. 468, 480 (1987). There are only three exceptions to the general rule that a state and its officers acting on its behalf are immune from suit in federal court under the Eleventh Amendment, namely, (1) a state may waive its Eleventh Amendment defense, see Coll. Sav. Bank v. Fla. Prepaid Postsec. Educ. Expense Bd., 527 U.S. 666, 670 (1999), (2) Congress may waive the states' sovereign immunity through the enactment of a statute, see Kimel, 528 U.S. at 80, and (3) pursuant to the *Ex Parte Young* doctrine, the Eleventh Amendment does not bar a "suit against a state official when that suit seeks . . . prospective injunctive relief, " Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 73 (1996).

Although the Supreme Court has not yet decided whether Eleventh Amendment immunity is an issue of subject matter jurisdiction, see Wis. Dep't of Corr. v. Schacht, 524 U.S.

381, 391 (1998), the Second Circuit has held that a finding of sovereign immunity on behalf of a defendant deprives the court of subject matter jurisdiction.  See McGinty v. New York, 251 F.3d 84, 101 (2d Cir. 2001) ("[W]e are constrained to agree with the district court that it lacked subject matter jurisdiction over plaintiffs' claims because the Eleventh Amendment cloaks all defendants with sovereign immunity").  Because I conclude, and respectfully recommend that Your Honor should conclude, that Plaintiff's Title I claim is barred by the Eleventh Amendment, I conclude, and respectfully recommend that Your Honor should conclude, that Plaintiff's Title I claim should be dismissed under Rule 12(b)(1).

Title I of the ADA ("Title I") contains a general prohibition of discrimination against qualified individuals with disabilities in matters of job application, hiring, advancement, discharge, compensation, training, and any other terms and conditions of employment.  42 U.S.C. § 12112(a).  Although under the ADA Congress attempted to waive sovereign immunity and authorize suits against states, see 42 U.S.C. § 12202, in Board of Trustees v. Garrett, 531 U.S. 356, 364 (2001), the Supreme Court held that Congress did not validly abrogate states' Eleventh Amendment immunity for claims brought under Title I against states for monetary damages.  Id. at 364 (holding that the Eleventh Amendment limits the federal judicial power and that Congress cannot use its Article I powers to circumvent the constitutional limits placed on the courts) (quoting Seminole Tribe of Fla., 517 U.S. at 72-73).  Therefore, states are entitled to assert Eleventh Amendment immunity in suits brought under Title I for monetary damages.  Id.

Accordingly, because Plaintiff brings this action against Defendant, a state agency, for monetary damages, in addition to equitable relief, see Am. Compl. at 5-6, Defendant is entitled to Eleventh Amendment immunity for the purposes of Plaintiff's Title I claim against it for money damages.  See Morningside Supermarket Corp. v. N.Y. State Dep't of Health, 432 F.

7

Supp. 2d 334, 338 (S.D.N.Y. 2006) (holding that the Department of Health is covered by the Eleventh Amendment like any other state department).  Therefore, I conclude, and respectfully recommend that Your Honor should conclude, that Plaintiff's Title I claim against Defendant for monetary damages should be dismissed.

As noted supra, Plaintiff also seeks equitable relief, in the form of reinstatement, under Title I of the ADA.  Pl.'s Opp'n ¶¶ 26-28.  Because Eleventh Amendment immunity applies regardless of the nature of the relief sought, absent abrogation or waiver, Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101 (1984), Defendant asserts Eleventh Amendment immunity for this claim as well.  Def's Mem. Supp. Mot. to Dismiss at 3.  After the Supreme Court's decision in Garrett, a private cause of action against the state for injunctive relief under Title I may only be brought under the *Ex Parte Young* exception.  Garrett, 531 U.S. at 374 n. 9 ("[Title I of the ADA] can be enforced by the United States in actions for money damages, as well as by private individuals in actions for injunctive relief under *Ex Parte Young*" ); see also Smith v. State Univ. of N.Y., No. 00-1454, 2003 WL 1937208, at *5 (N.D.N.Y. Apr. 23, 2003) (holding that the plaintiff's Title I claim seeking reinstatement against individuals in their official capacities survives summary judgment pursuant to *Ex Parte Young*).

Plaintiff argues that the exception to Eleventh Amendment immunity under *Ex Parte Young* is applicable to her claim under Title I for equitable relief.  Pl.'s Opp'n ¶¶ 26-28.  Under the *Ex Parte Young* Doctrine, suits against state officers in their individual capacities are not barred by the Eleventh Amendment.  See Pennhurst, 465 U.S. at 103 (holding that, under the theory of *Ex Parte Young*, an action for prospective relief against the state officer was not an action against the state because the allegation of a violation of federal law would strip the officer of his official authority).  Plaintiff, however, has not named any state officers either in their

8

official or individual capacities, and therefore has not used the *Ex Parte Young* "fiction." Am. Compl. ¶ 3. While Plaintiff acknowledges that she has not used the *Ex Parte Young* "fiction," Plaintiff argues that the *Ex Parte Young* requirement that individual state officers be named in order to recover injunctive relief should be abandoned. Pl's Opp'n ¶ 28. Despite Plaintiff's assertion, the Second Circuit still requires that state officers be named in order for the *Ex Parte Young* exception to apply. See, e.g., Santiago v. N.Y. State Dep't of Corr. Servs., 945 F.2d 25, 32 (2d Cir. 1991) (dismissing equitable claims for prospective relief because plaintiff did not use *Ex Parte Young* "fiction," but instead named state agency); Harris v. N.Y., 419 F. Supp. 2d 530, 534 (S.D.N.Y. 2006) (dismissing the plaintiff's Title II claims for injunctive relief because the plaintiff did not name state officials as required by *Ex Parte Young*). Therefore, because Plaintiff did not name individual state officials as defendants, Plaintiff cannot assert the *Ex Parte Young* exception to defeat Defendant's Eleventh Amendment immunity. Accordingly, I conclude, and respectfully recommend that Your Honor should conclude, that Plaintiff's Title I claim for injunctive relief does not survive under the *Ex Parte Young* exception.

Plaintiff also raises several arguments asserting that Defendant has waived its Eleventh Amendment immunity, and therefore, her claim under Title I for equitable relief is not barred. Pl.'s Opp'n ¶¶ 1-13. First, Plaintiff argues that New York has waived its Eleventh Amendment immunity because the State of New York Department of Civil Service website directs employees to look to the ADA for information about reasonable accommodation. Pl.'s Opp'n ¶¶ 2-5 (citing http://www.cs.state.ny.us/dpm/reasonaccom.cfm). Although a state may waive sovereign immunity by consenting to suit, see Coll. Sav. Bank, 527 U.S. at 670 (citing to Clark v. Barnard, 108 U.S. 436, 447 (1883)), the state's waiver must be an " 'intentional relinquishment or abandonment of a known right or privilege.' " Id. at 682 (quoting Johnson v. Zerbst, 304 U.S.

458, 464 (1938)).  State waiver of Eleventh Amendment immunity will be found "only where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.' "  Edelman v. Jordan, 415 U.S. 651, 673 (1974) (quoting Murray v. Wilson Distilling Co., 213 U.S. 151, 171 (1909)).  After viewing the New York Department of Civil Service website, I conclude, and respectfully recommend that Your Honor should conclude, that the website is not a valid waiver of New York's Eleventh Amendment immunity.  The website merely provides a downloadable version of the "Procedures for Implementing Reasonable Accommodation in New York State Agencies," and provides several informational links regarding reasonable accommodation, including links to the websites for the New York State Division of Human Rights, the New York State Commission on Quality of Care and Advocacy to Persons with Disabilities (CQCAPD), and the statutory language of the ADA.  The website does not contain any "express language" or "overwhelming implications" that would lead to the conclusion that New York has waived its Eleventh Amendment immunity.  Therefore, I conclude, and respectfully recommend that Your Honor should conclude, that New York has not waived its sovereign immunity through the Department of Civil Services Website.

Next, Plaintiff argues that New York has waived its immunity because Defendant has not moved to dismiss Plaintiff's first cause of action under the Rehabilitation Act § 504.  Pl.'s Opp'n ¶¶ 9-10.  Although the ADA and the Rehabilitation Act are similar, a defendant can be liable under the Rehabilitation Act's broader provisions, but exempt from liability under the narrower coverage of the ADA.  Johnson v. New York Hosp., 897 F. Supp. 83, 86 (S.D.N.Y. 1995), aff'd, 96 F.3d 33 (2d Cir. 1996).  Therefore, I conclude, and respectfully recommend that Your Honor should conclude, that Defendant's failure to move to dismiss Plaintiff's claim under the

Rehabilitation Act does not constitute a waiver of the Defendant's immunity under the Eleventh Amendment.

Finally, Plaintiff argues that Defendant has waived its immunity because states can be sued in federal court under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et seq. and Plaintiff's claims under the ADA are similar to those filed under the FMLA. Pl.'s Opp'n ¶¶ 11-13. The parties have not cited, and I cannot find, any authority from Congress or case precedent that supports the proposition that the abrogation of states' Eleventh Amendment immunity under the FMLA extends to the ADA. Therefore, I conclude, and respectfully recommend that Your Honor should conclude, that this argument is without merit. Accordingly, I conclude, and respectfully recommend that Your Honor should conclude, that in addition to Plaintiff's Title I claim for money damages, Plaintiff's Title I claim for equitable relief against Defendant is also barred by the Eleventh Amendment and should be dismissed under Rule 12(b)(1).

        2.    Title II of the ADA

Defendant has moved to dismiss Plaintiff's Title II claim on the grounds that Plaintiff has not stated a valid cause of action. In the alternative, Defendant has also moved to dismiss Plaintiff's Title II claim on the grounds that Congress did not validly abrogate the states' Eleventh Amendment Immunity pursuant to Congress' § 5 powers under the Fourteenth Amendment.

Title II of the ADA ("Title II") protects an individual with a disability from discrimination in receiving public services. 42 U.S.C. § 12132. Specifically, Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public

entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  A public entity includes "(A) any State or local government; [and] (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government . . . ." 42 U.S.C. § 12131(1).  As a department of the State of New York, Defendant qualifies as a public entity for the purpose of Title II.  However, I conclude, and respectfully recommend that Your Honor should conclude, that Plaintiff's claim under Title II should be dismissed under Rule 12(b)(6).

The Supreme Court has not yet resolved the issue of whether Title II validly abrogates a state's Eleventh Amendment immunity in the employment discrimination context.  Although in Garrett, 531 U.S. at 364, the Supreme Court held that claims for monetary damages under Title I are barred by the Eleventh Amendment, it specifically left open the question of whether claims for monetary damages are available under Title II.  Id. at 360 n.1 ("We are not disposed to decide the constitutional issue whether Title II, which has somewhat different remedial provisions from Title I, is appropriate legislation under § 5 of the Fourteenth Amendment when the parties have not favored us with briefing on the statutory question.").

Additionally, in Garrett the Supreme Court also mentioned but did not decide whether a plaintiff may even state a claim for employment discrimination under Title II.  However, the Supreme Court seemed to indicate that a plaintiff may not.  Id.; see also Syken v. New York, No. 02-4673, 2003 U.S. Dist. LEXIS 5358, at *22 (S.D.N.Y. Apr. 2, 2003) (noting that the Supreme Court  "seemed to signal that it would not find Title II applicable to employment discrimination cases").

Thus, Plaintiff's Title II claim raises both a statutory construction question and a constitutional question – the statutory construction question being whether or not Title II is applicable to employment discrimination cases, and the constitutional question being whether or

not Congress, pursuant to its authority under § 5 of the Fourteenth Amendment, validly abrogated the states' Eleventh Amendment immunity under Title II.  Because the Supreme Court has called for judicial restraint in deciding the constitutionality of a statute if the case may be decided on other grounds, see, e.g., Dep't of Commerce v. U.S. House of Representatives, 525 U.S. 316, 343-344 (1999) (citing Ashwander v. Tenn. Valley Auth., 297 U.S. 288, 347 (1936) (Brandeis, J., concurring) ("[I]f a case can be decided on either of two grounds, one involving a constitutional question, the other of statutory construction or general law, the [Supreme Court] will decide only the latter.")); Anobile v. Pelligrino, 303 F.3d 107, 123 (2d Cir. 2001) ("Principles of judicial restraint caution us to avoid reaching constitutional questions when they are unnecessary to the disposition of a case.") (citing Horne v. Coughlin, 191 F.3d 244, 246 (2d Cir. 1999)), and because I conclude, and respectfully recommend that Your Honor should conclude, that Plaintiff's Title II claim should be dismissed on statutory construction grounds, I do not address the constitutional question herein.

The 4th, 5th, 9th, 10th, and 11th Circuits, as well as district courts within the Second Circuit, have addressed the applicability of Title II to employment discrimination with conflicting results.  See, e.g., Zimmerman v. Oregon Dep't of Justice, 170 F.3d 1169, 1173 (9th Cir. 1999) (holding Title II inapplicable to employment discrimination); Davoll v. Webb, 194 F.3d 1116, 1130 (10th Cir. 1999) (assuming Title II applicable to employment discrimination); Bledsoe v. Palm Beach County Soil & Water Conservation Dist., 133 F.3d 816, 820 (11th Cir. 1998) (holding Title II permits an employment discrimination claim against a public entity); Holmes v. Texas A & M Univ., 145 F.3d 681, 683-84 (5th Cir. 1998) (assuming Title II applicable to employment discrimination); Doe v. Univ. of Md. Med. Sys. Corp., 50 F.3d 1261, 1264-65 (4th Cir. 1995) (assuming Title II applicable in the employment context); Sworn v. Western N.Y.

Children's Psychiatric Ctr., 269 F. Supp. 2d 152, 157 (W.D.N.Y. 2003) (holding Title II inapplicable); Smith v. State Univ. of N.Y., No. 00-1454, 2003 WL 1937208, at *8 (N.D.N.Y. Apr. 23, 2003) (holding Title II applicable); Syken v. State of N.Y., Executive Dep't, Div. of Hous. & Cmty. Renewal, No. 02-4673, 2003 U.S. Dist. LEXIS 5358, at *23 (S.D.N.Y. Apr. 2, 2003) (holding Title II inapplicable); Winokur v. Office of Ct. Adm., 190 F. Supp. 2d 444, 449 (E.D.N.Y. 2002) (holding Title II applicable); see also Hinton v. The City College of New York, 05 Civ. 8951, 2008 U.S. Dist. LEXIS 16058, at *70-71 & n.22 (S.D.N.Y. Feb. 29, 2008) (noting split among circuits as well as fact that "[a]lthough the Second Circuit has yet to address this issue, district courts in this Circuit have been split").

As noted supra, in Syken, the district court concluded, after reviewing Garrett and similar circuit and district court decisions, that Title II does not permit an employment discrimination claim. Syken, 2003 U.S. Dist. LEXIS 5358, at *34. In reaching that conclusion, the court extensively analyzed the text of Title II, the structure of the ADA, and case precedent. Id. at *25-34. In large part, the court adopted the Ninth Circuit's reasoning from Zimmerman, 170 F.3d at 1173. Id. at *25-34. Specifically, the court in Syken agreed with the Ninth Circuit's reasoning that "employment by a public entity is not commonly thought of as a 'service, program, or activity of a public entity.' " Id. at *25 (quoting Zimmerman, 170 F.3d at 1174), and that Congress intended Title I, entitled "Employment," to address employment, whereas Title II, entitled "Public Services," was not intended to address employment. Id. at *26; see also Zimmerman, 170 F.3d at 1175 ("[T]he title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute.") (quoting Almendarez-Torres v. U.S., 523 U.S. 224 (1998)). Furthermore, the court in Syken noted that the definitions

for a "qualified individual with a disability" differ under each Title.  See Syken, 2003 U.S. Dist. LEXIS 5358, at *26.  Under Title I, a "qualified individual with a disability" is defined as:

> an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. For the purposes of this subchapter, consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job.

42 U.S.C. § 12111(8).  Unlike the above definition, under Title II the definition for a "qualified individual with a disability" does not make any mention of employment.  See, e.g., 42 U.S.C. § 12131(2); Syken, 2003 U.S. Dist. LEXIS 5358, at *26-27.  Under Title II a "qualified individual with a disability" is defined as:

> an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. §12131(2).

Finally, the court in Syken stated that "[u]nlike Title I, Title II does not require a plaintiff to exhaust his administrative remedies prior to filing suit.  Therefore, allowing a plaintiff to bring an employment discrimination suit under Title II allows him to bypass the administrative exhaustion requirement of Title I." 2003 U.S. Dist. LEXIS 5358, at *28.  Following the court's analysis in Syken, I conclude, and respectfully recommend that Your Honor should conclude, that the Zimmerman analysis should be applied here, barring Plaintiff's claim as inapplicable under Title II of the ADA.  Accordingly, I conclude, and respectfully recommend that Your Honor should conclude, that Defendant's motion to dismiss Plaintiff's Title II claims for monetary and equitable relief against Defendant for failure to state a claim should be granted.

C.     Discrimination Claim Under 42 U.S.C. § 1981

Plaintiff also brings a discrimination claim pursuant to 42 U.S.C. § 1981 against Defendant. Congress has not abrogated the states' sovereign immunity under 42 U.S.C. § 1981. See, e.g., Moore v. N.Y. State Div. of Parole, 06-CV-1973, 2008 U.S. Dist. LEXIS 72260, at *20 (E.D.N.Y. Sept. 23, 2008) ("Congress, in enacting § 1981, did not override New York State's Eleventh Amendment immunity.") (citations omitted); Sutherland v. N.Y. State Dep't of Law, No. 96-6935, 1999 WL 314186, at *10 (S.D.N.Y. May 19, 1999) (holding that Plaintiff's § 1981 claim was barred by the Eleventh Amendment), aff'd, 216 F.3d 1073 (2d Cir. 2000); Stephens v. State Univ. of N.Y., 11 F. Supp. 2d 242, 251 (W.D.N.Y. 1998) (finding that Congress has not overridden states' sovereign immunity with respect to 42 U.S.C. § 1981) (citing Fitzpatrick v. Bitzer, 427 U.S. 445, 452 (1976)). Accordingly, I conclude, and respectfully recommend that Your Honor should conclude, that Plaintiff's § 1981 claim against Defendant is barred by the Eleventh Amendment.

D.     State Law Claims

When a federal court obtains jurisdiction over a federal claim, it may adjudicate other related claims over which the court otherwise would not have jurisdiction. See Pennhurst, 465 U.S. at 117. However, the grant of supplemental jurisdiction given by 28 U.S.C. § 1367(a) does not constitute a congressional abrogation of the states' Eleventh Amendment immunity. See, e.g., Raygor v. Regents of the Univ. of Minn., 534 U.S. 533, 541-542 (2002); Winokur, 190 F. Supp. 2d at 450.

Several district courts in the Second Circuit have found that New York Executive Law § 296 includes no waiver of New York's Eleventh Amendment immunity to suit in federal court. See, e.g., Winokur, 190 F. Supp. 2d at 451; Lambert v. N.Y. State Office of Mental Health, No.

97-1347, 2000 WL 574193, at *7 (E.D.N.Y. Apr. 24, 2000), aff'd, 22 F. App'x 71 (2d Cir. 2001); Arroyo v. N.Y. State Ins. Dep't, No. 91-4200, 1993 WL 248210, at *3 (S.D.N.Y. June 30, 1993). In addition, New York has not waived its immunity under the Westchester County Human Rights Law § 700.03, because the County does not have the authority to waive the State's Eleventh Amendment immunity. See, e.g., Leiman v. State of N.Y., No. 98-5538, 2000 U.S. Dist. LEXIS 13586, at *22-23 (S.D.N.Y. Sept. 21, 2000) (dismissing civil rights claim against New York under New York City Administrative Code, and stating "there is no support for the proposition that a political subdivision . . . could waive New York State's [Eleventh Amendment] immunity"), aff'd, 9 F. App'x 37 (2d Cir. 2001). Accordingly, I conclude, and respectfully recommend that Your Honor should conclude, that Plaintiff's state claims against Defendant are also barred by the Eleventh Amendment.

### III.    CONCLUSION

For the foregoing reasons I conclude, and respectfully recommend that Your Honor should conclude, that Defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) should be granted. Specifically, I conclude and respectfully recommend that Your Honor should conclude, that Plaintiff's claims under Title I of the ADA, § 1981, N.Y. State and local laws against Defendant, a state agency, are barred by its sovereign immunity under the Eleventh Amendment. I also conclude and respectfully recommend that Your Honor should conclude, that Plaintiff's Title II claim fails to state a claim under Fed. R. Civ. P. 12(b)(6) and therefore should be dismissed.

IV. **NOTICE**

Pursuant to 28 U.S.C. 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have ten (10) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(d), or a total of thirteen (13) working days, see Fed. R. Civ. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court with extra copies delivered to the chambers of The Honorable Stephen C. Robinson at the United States Courthouse, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Robinson.

Dated: December 12, 2008
White Plains, New York

Respectfully submitted,

Lisa Margaret Smith
United States Magistrate Judge
Southern District of New York

A copy of the foregoing Report and Recommendation has been sent to the following:

The Honorable Stephen C. Robinson, U.S.D.J.

18