UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
VALERIE MELROSE,

                              Plaintiff,

          - against -

NEW YORK STATE DEPARTMENT OF
HEALTH OFFICE OF PROFESSIONAL
MEDICAL CONDUCT,

                              Defendant.
------------------------------------------------------------------x

**DEFENDANT'S STATEMENT OF MATERIAL FACTS PURSUANT TO LOCAL CIVIL RULE 56.1**

05-CV-8778 (SCR)
ECF Case

Defendant New York State Department of Health Office of Professional Medical Conduct, by its attorney, Andrew M. Cuomo, Attorney General of the State of New York, submits the following statement of material facts as to which it contends there is no genuine issue of fact to be tried:

**I.      Nature of This Action**

1.      Plaintiff, a probationary employee, claims that her termination was a result of discrimination based on her disability.  Only the claim brought under the Rehabilitation Act remains following Judge Robinson's Order of January 26, 2009, accepting the Report and Recommendation of Magistrate Judge Smith to dismiss Plaintiff's claims under the Westchester County Human Rights Law § 700.03, New York State Executive Law § 296, The Americans with Disabilities Act, and 42 U.S.C. § 1981.

**II.     Parties**

2.      Plaintiff Valerie Melrose began working as a probationary Senior Medical Conduct Investigator with the New York State Department of Health Office of Professional Medical Conduct ("OPMC") on or about September 25, 2003.  Amended Complaint ¶ 8.

3.      OPMC is an administrative agency within the New York State Department of

Health, with an office and place of business located at 145 Huguenot St., New Rochelle, in the county of Westchester, New York, 10801.  Amended Complaint ¶ 3.

### III.   Plaintiff's Employment With OPMC

4.      When Plaintiff interviewed for the position with OPMC in 2003, she was informed that it was a full time position. Deposition of Valerie Melrose dated May 11, 2009 ("Melrose Dep.") at 38.[1]

5.      Plaintiff informed the panel interviewing her that she had been working less than full time in her previous position, but that she did not see why working full time for OPMC would be a problem.  Melrose Dep. at 40.

6.      During the interview, Plaintiff did not describe her disability.  Melrose Dep. at 198.

7.      Plaintiff was required to serve one year as a probationary employee.  Melrose Dep. at 39; Affidavit of Denise Fiendel ("Fiendel Aff."), dated February 3, 2010, ¶ 14.

8.      Plaintiff was responsible for investigating complaints of professional misconduct against physicians and physician assistants, including interviewing witnesses, complainants, and physicians, gathering medical records and working with the OPMC Medical Coordinators and OPMC attorneys.  Melrose Dep. at 41.

9.      During 2003-2004, it was office policy that at least one investigator always be in the office during office hours, 8:30 a.m. to 4:45 p.m.  Affidavit of Mary Malone ("Malone Aff."), ¶ 8; Melrose Dep. at 180.

---

[1]    All depositions excerpts are annexed to the declaration of Kathryn Leone ("Leone Decl.") dated February 8, 2010.

10. Plaintiff's work hours were 9:00 a.m. to 5:00 p.m. Melrose Dep. at 39.

11. Mary Malone was Plaintiff's supervisor. Melrose Dep. at 48.

12. All new permanently appointed employees or employees that change job title must complete a probationary period as set forth in APPM 601.0. Fiendel Aff. ¶ 5, Ex. A.

13. An employee's probationary period "represents a continuation of the examination and selection process." APPM 601.0, Fiendel Aff. ¶ 6, Ex. A.

14. Pursuant to APPM 616.6, the official business hours for all Department of Health offices are 8:30 a.m. to 4:45 p.m., and all offices are to be "sufficiently staffed during official business hours to effectively carry out the Department's missions." Malone Aff., Ex. G.

15. Pursuant to APPM 616.10, "supervisors may approve alternative work schedules to provide more flexibility in the delivery of services to the citizens of the State while providing employees some options in balancing the demands of job and home" but "supervisors are not obligated to approve these changes and should consider such changes as a means to achieve work objectives." Malone Aff., Ex. E.

16. Pursuant to APPM 616.2, sick leave may be used "during the illness or disability of the employee, when absence occurs due to illness or death in the employee's family, and for visits to certain medical practitioners." Malone Aff., Ex. K.

17. It is not expected that an employee uses his or her leave accruals to the detriment of his or her job responsibilities. Fiendel Aff. ¶ 8.

18. According to APPM 616.2, "[b]ased on a review of an employee's attendance record, management may require an employee on an ongoing basis to provide medical certification for all absences allegedly due to illness, by providing prior written notification to

3

the employee." Malone Aff., Ex. K.

19. Pursuant to APPM 31.1, "[t]elephone equipment and services are provided by the Department for use by employees in the performance of official state business." Malone Aff., Ex. A.

20. "Employees are responsible for economical, reasonable and proper use of the telephone equipment and services provided." APPM 31.1, Malone Aff., Ex. A.

21. Personal use of the telephone may result in "lost employee time and productivity," therefore excessive personal use "may result in disciplinary action." APPM 313.1, Malone Aff., Ex. A.

22. Pursuant to APPM 616.5, an employee may request leave without pay, which is temporary removal from the payroll without termination of the employer-employee relationship. Fiendel Aff., Ex. B.

23. Ordinarily, leave without pay is granted only to permanent employees, and an employee is expected to exhaust leave credits before the leave of absence without pay is granted. APPM 616.5, Fiendel Aff., Ex. B.

24. Pursuant to APPM 750.2, "[t]he Department of Health provides reasonable accommodations to persons with disabilities who are otherwise qualified for the position for which they are applying or in which they are employed." Fiendel Aff., Ex. C.

25. An employee requesting a reasonable accommodation must prepare Form DOH-4017. APPM 750.2, Fiendel Aff., Ex.C.

26. Probation and Development Reports ("P&D Report") are filled out periodically by the probationary employee's supervisor, and are provided to the employee for his or her

review and signature, in order to evaluate the employee's work performance, provide the opportunity for supervisors to reinforce to the employee the desirable work procedures and habits, to provide valuable feedback to the employee, and to present to the employee the expectations of the position.  Fiendel Aff. ¶ 10.

27. In Plaintiff's first P&D Report, dated November 19, 2003, Plaintiff received ratings of "3," *i.e.* "Effective," for work quality, work quantity, initiative/resourcefulness, reliability, and interpersonal relations.  Malone Aff. ¶ 14, Ex. B.

28. Ms. Malone held coaching sessions with Plaintiff on April 7, 2004, and again on May 6, 2004, to address Plaintiff's frequent tardiness.  Melrose Dep. at 90-91; Malone Aff. ¶ 19, Ex. H.

29. During these coaching sessions, Ms. Malone advised Plaintiff that time and attendance were carefully scrutinized during the probationary period, that the amount of approved and unapproved leave time she was taking was a concern, and that these issues could affect Plaintiff passing probation.  Malone Aff. ¶ 19, Ex. H.

30. These coaching sessions were memorialized in a counseling memo dated May 6, 2004.  Malone Aff., Ex. H.

31. Plaintiff signed the May 6, 2004 counseling memo acknowledging receipt.  Malone Aff., Ex. H; Melrose Dep. at 169-70.

32. In her second P&D Report, dated May 5, 2004, Plaintiff received a rating of "2," for work quantity, and a rating of "1," for reliability.  Malone Aff. ¶ 15, Ex. C.

33. Regarding work quantity, Ms. Malone reported that the quantity of work produced by Plaintiff is in proportion to the amount of time in attendance.  Malone Aff. ¶ 15,

Ex. C.

34.	Regarding reliability, Ms. Malone reported that improvement in reliability was needed due to Plaintiff's tardiness and numerous instances of unscheduled leave. Malone Aff. ¶ 15, Ex. C.

35.	Ms. Malone noted that these issues could affect Plaintiff passing probation. Malone Aff. ¶ 15, Ex. C.

36.	Ms. Malone held a coaching session with Plaintiff again on June 16, 2004 to discuss time and attendance issues as well as Plaintiff's continued personal telephone usage. Malone Aff. ¶ 22, Ex. L.

37.	During the June 16, 2004 coaching session, Ms. Malone advised Plaintiff that her poor attendance could be affecting her work productivity, and was advised to contact the Employee Assistance Program if she had any family or personal problems that may be impacting her job performance. Malone Aff. ¶ 22, Ex. L.

38.	Plaintiff was further advised that her personal telephone usage results in lost employee time and productivity, and that her continued personal use of the telephone could result in disciplinary action. Malone Aff. ¶ 22, Ex. L.

39.	Ms. Malone memorialized this counseling session in a counseling memo dated June 17, 2004. Malone Aff., Ex. L.

40.	Plaintiff signed the June 17, 2004 counseling memo acknowledging receipt. Malone Aff., Ex. L; Melrose Dep. at 173.

41.	As a result of Plaintiff's attendance history and use of sick leave, Ms. Malone required Plaintiff, pursuant to APPM 616.2, to submit a doctor's note upon return to work when

sick leave credits were used.  Malone Aff. ¶ 22, Exs. K & L; Melrose Dep. 176.

42. Ms. Malone gave Plaintiff copies of APPM 616.2, Sick Leave, and APPM 31.1, Telephone Usage, during the coaching sessions.  Melrose Dep. at 175-76; Malone Aff., Exs. H & L.

43. On June 16, 2004, the same day she was counseled about attendance and telephone issues, Plaintiff left work early without permission.  Melrose Dep. at 179-82; Malone Aff. ¶ 24.

44. Plaintiff's unauthorized early departure resulted in no OPMC investigators being present in the office for a period of time during office hours.  Melrose Dep. at 180.

45. Plaintiff was aware of office policy that there always had to be an OPMC investigator in the office during office hours.  Melrose Dep. at 180.

46. Plaintiff failed to amend her time sheet to reflect that she left early that day.  Melrose Dep. at 182.

47. On her third and final P&D Report dated June 30, 2004, Plaintiff received a rating of "1" for work quality, work quantity, initiative/resourcefulness, reliability and interpersonal relations.  Malone Aff. ¶ 25, Ex. M.

48. In an attachment to the Report, Ms. Malone set forth the reasons for the ratings, including poor work quality and quantity due to Plaintiff's excessive absenteeism, the need for constant supervision due to Plaintiff's continued violation of the Department's telephone usage policy, poor reliability due to Plaintiff's failure to adhere to policies and procedures of the Department, and Plaintiff's poor working relationship with support staff and supervisors.  Malone Aff. ¶ 25, Ex. M.

49. On this P&D Report, Ms. Malone recommended that Plaintiff be dismissed based on her inability to come into compliance with the requirements and expectations of the position. Malone Aff. ¶ 25, Ex. M.

50. Plaintiff's termination became effective August 7, 2004. Melrose Dep. at 10; Fiendel Aff. ¶ 18.

51. Plaintiff sent Denise Fiendel a letter dated January 10, 2005, which enclosed Plaintiff's Probation and Development Report dated June 30, 2004 and Plaintiff's response to this Report. *See* Fiendel Aff., Ex. E.

52. In her response to the June 30, 2004 Report, Plaintiff did not state that she thought she was terminated based on her disability. Melrose Dep. at 188; Fiendel Aff., Ex. E.

53. In her response to the June 30, 2004 Report, Plaintiff claimed that her termination was "a financially motivated decision . . ." Melrose Dep. at 186-87; Fiendel Aff., Ex. E.

54. Plaintiff used the State telephone for personal use "four, five, six times." Melrose Dep. at 172.

55. Plaintiff used the State telephone to speak with her mother, a friend and her lawyer. Melrose Dep. at 51, 53, 172.

56. Plaintiff was late to work on the following dates for reasons other than her alleged disability: 11/20/03; 2/24/04; 3/19/04; 4/28/04. Malone Aff., Ex. I; Melrose Dep. at 132-33; 139; 142.

57. Plaintiff arrived late to work on November 20, 2003 due to heavy rain and a flooded highway. Malone Aff., Ex. I; Melrose Dep. at 133.

58. Plaintiff arrived late to work on February 24, 2004 because her car broke down.

Malone Aff., Ex. I; Melrose Dep. at 139.

59. Plaintiff arrived late to work on March 19, 2004 because of "snow and ice." Malone Aff., Ex. I; Melrose Dep. at 140.

60. Plaintiff arrived late to work on April 28, 2004 because the elevators in her apartment building were not running.  Malone Aff., Ex. I; Melrose Dep. at 142.

61. Plaintiff took leave without prior approval on the following days for reasons other than her alleged disability: 10/28/03; 12/08/03; 12/11/03; 1/22/04; 2/18/04; 3/16/04; 4/08/04; 4/09/04; 4/14/04; 6/16/04.  Malone Aff., Ex. I; Melrose Dep. at 132; 135-42.

62. Plaintiff took leave without prior approval on October 28, 2003 because she had a cold.  Malone Aff., Ex. I; Melrose Dep. at 132.

63. Plaintiff took leave without prior approval on December 8, 2003 and December 11, 2003 because she had a cold.  Malone Aff., Ex. I; Melrose Dep. at 135-36.

64. Plaintiff took leave without prior approval on January 22, 2004 to attend a doctor appointment.  Malone Aff., Ex. I; Melrose Dep. at 137-38.

65. Plaintiff took leave without prior approval on February 18, 2004 for reasons she could not recall during her deposition.  Malone Aff., Ex. I; Melrose Dep. at 138.

66. Plaintiff took leave without prior approval on March 16, 2004 because of back spasms.  Malone Aff., Ex. I; Melrose Dep. at 139.

67. Plaintiff took leave without prior approval on April 8, 2004 and April 9, 2004 because her car broke down.  Malone Aff., Ex. I; Melrose Dep. at 140-41.

68. Plaintiff took leave without prior approval on April 14, 2004 because she was not feeling well.  Malone Aff., Ex. I; Melrose Dep. at 141.

69. Plaintiff left work without prior approval on June 16, 2004 to attend a doctor appointment. Malone Aff., Ex. I; Melrose Dep. at 180-181.

70. On June 1, 2004, Plaintiff filled out a leave request form requesting to take sick leave-personal time on June 22, 2004 from 2:30 p.m. to 4:00 p.m. Melrose Dep. at 146, Malone Aff., ¶ 18; Ex. F.

71. On June 16, 2004, Ms. Malone approved Plaintiff's use of personal sick leave on June 22, 2004 from 2:30 p.m. to 5:00 p.m. Melrose Dep. at 145-147, Malone Aff., Ex. F.

72. On June 1, 2004 Plaintiff filled out a leave request form requesting to take personal leave on June 25, 2004 from 2:00 p.m. to 4:00 p.m. and personal leave on June 28, 2004 from 9:00 a.m. to 5:00 p.m. Melrose Dep. at 150-152; Malone Aff. Ex. F.

73. On June 16, 2004, Ms. Malone approved Plaintiff's use of personal leave on June 25, 2004 from 2:00 p.m. to 5:00 p.m. and June 28, 2004 from 9:00 a.m. to 5:00 p.m. Melrose Dep. at 150-151; Malone Aff., Ex. F.

74. On June 1, 2004 Plaintiff filled out a leave request form requesting to take family sick leave on June 29, 2004 from 3:00 p.m. to 4:00 p.m. Melrose Dep. at 153-155; Malone Aff. Ex. F.

75. Plaintiff requested family sick leave for June 29, 2004 in order to bring her mother to a doctor appointment. Melrose Dep. at 156.

76. On June 16, 2004, Ms. Malone approved Plaintiff's use of family sick leave on June 29, 2004 from 3:30 p.m. to 5:00 p.m. Melrose Dep. at 154, Malone Aff., Ex. F.

77. The handwritten notes on the bottom of each leave request form were written by Plaintiff after she was terminated. Melrose Dep. at 155.

10

78. Plaintiff did not complain to anyone when her requests for an altered work schedule were denied. Melrose Dep. at 84.

79. On May 19, 2004 and June 2, 2004, Ms. Malone permitted Plaintiff to change her schedule to begin work at 8:00 a.m. and leave work at 4:00 p.m. Melrose Dep. at 105-06; 107-08; Malone Aff. ¶ 16, Ex. D.

80. On May 12, 2004, Ms. Malone signed Plaintiff's Request for Reasonable Accommodation form DOH-4017, in which Plaintiff requested an ergonomic assessment of her work station, and forwarded it to a Reasonable Accommodation Coordinator. Malone Aff. ¶ 21, Ex. J.

81. Plaintiff did not fill out a Request for Reasonable Accommodation form DOH-4017 pursuant to APPM 750.2 for a reasonable accommodation for a change in her work hour schedule. Melrose Dep. at 200-05.

82. Plaintiff claims to suffer from avascular necrosis ("AVN") of the hips. Amended Complaint ¶ 7.

83. Plaintiff alleges that she had a total right hip replacement years earlier due to AVN. Melrose Dep. at 12-13.

84. While working at OPMC, Plaintiff only saw her treating AVN physician on one occasion, June 22, 2004. Melrose Dep. at 18, 147.

85. On "some days," Plaintiff alleges that she had difficulty getting ready for work because it was difficult to get out of bed and walk. Melrose Dep. at 81.

86. Plaintiff alleges that AVN affected her ability to "stand[] for long periods of time, sit[] for long periods of time, [and] walk[] long distances." Melrose Dep. at 21.

87. Because of AVN, Plaintiff testified that in inclement weather, she has to be careful how she walks, where she sits and how long she sits. Melrose Dep. at 20.

88. While working at OPMC, Plaintiff walked down 31 flights of stairs when the elevator in her apartment building was not working. Melrose Dep. at 142.

89. While working at OPMC, Plaintiff walked 3 to 4 miles home in a snowstorm. Melrose Dep. at 125.

90. While working at OPMC, Plaintiff went dancing "two or three times within a six or seven month period." Melrose Dep. at 213-14.

91. While working at OPMC, Plaintiff belonged to a gym, had a personal trainer and participated in weight bearing exercises and stretches. Melrose Dep. at 212.

92. On August 9, 2004, Plaintiff filed a verified complaint with the State Division of Human Rights alleging disability discrimination and race discrimination against Defendant in violation of the Human Rights Law of the State of New York. Leone Decl., Ex. D.

93. On March 18, 2005, the State Division of Human Rights issued its Determination and Order After Investigation finding insufficient evidence to conclude that Defendant's reasons for terminating Plaintiff's employment – *i.e.* poor time and attendance, misuse of the telephone and unacceptably low work production – were a pretext for discrimination. Leone Decl., Ex. D.

94. From 1978-1980, Plaintiff worked as an investigator for the Inspector General's Office for the Department of Ports and Terminals. Melrose Dep. at 11.

95. Plaintiff sued the City of New York under Title VII, 42 U.S.C. § 2000e, *et seq.*, alleging that the City's decision not to hire her as a Confidential Investigator in 1980 -- when the Inspector General's Office of the Ports and Terminals was absorbed by the Inspector

General's Office of the Department of General Services -- was racially motivated. *See Melrose v. The City of New York*, No. 86 Civ. 1424, 1991 WL 13643 (S.D.N.Y. Jan. 17, 1991), Leone Decl., Ex. C.

96. After a bench trial, Magistrate Judge Grubin determined that Plaintiff failed to show that the justifications proffered by the City in deciding not to hire Plaintiff were pretextual. *Melrose*, 1991 WL 13643, at *5.

97. The Court determined that the City's decision not to hire Plaintiff was based on a number of factors, including evaluations that Plaintiff received as an investigator with the Department of Ports and Terminals that noted her continuing attendance and punctuality problems. *Melrose*, 1991 WL 13643, at *4.

Dated: New York, New York
       February 8, 2010

                                     ANDREW M. CUOMO
                                     Attorney General
                                         of the State of New York
                                     Attorney for Defendant
                                     By:

                                            /s/
                                     Kathryn E. Leone
                                     Assistant Attorney General
                                     120 Broadway – 24th Floor
                                     New York, New York 10271
                                     Telephone:  212-416-8661


To:    Jason M. Baxter, Esq.
        Attorney for Plaintiff
        267 Fifth Avenue, Suite 810
        New York, New York 10016
        212-889-9811